IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NADEL AND GUSSMAN, LLC, an Oklahoma limited liability company, SPYGLASS ENERGY GROUP, LLC, an Oklahoma limited liability company, Plaintiffs, vs. REED FAMILY RANCH, LLC, et al., Defendants. | Case No. 13-CV-570-TCK-TLW |

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 11).

**I.      Background**

Plaintiff Spyglass Energy Group, LLC entered into four "Oil & Gas Mining Leases" with the Osage Nation, which are operated by Plaintiff Nadel and Gussman, LLC. Defendants own land in Osage County, Oklahoma, which has allegedly been damaged by Plaintiffs' operation of the leases. The leases are governed by the Osage Allotment Act ("Act"), 34 Stat. 539 (1906), and were approved by the Secretary of the Interior.

**A.      Section 2 of the Osage Allotment Act and Implementing Regulations**

Section 2 of the Act governs compensation to be paid to surface owners for damage to their land "as a result of the use of such land for oil or gas mining purposes":

> The bona fide owner or lessee of the surface of the land shall be compensated under rules and regulations prescribed by the Secretary of the Interior in connection with the oil and gas mining operations, for any damage that shall accrue after the passage of this Act as a result of the use of such land for oil or gas mining purposes, or out of damages to the land or crops thereon occasioned thereby, but nothing herein contained shall be construed to deny the surface owner or lessee the right to appeal to the courts, without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him.  All claims for damages arising under this section shall be settled by arbitration under rules and regulations to be prescribed by the Secretary of the Interior; but either party shall have the right to appeal to the courts without consent of the Secretary of the Interior in the event

> he is dissatisfied with the award to or against him. *The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County*, to enlarge, modify or set aside the award, and in any such action, upon demand of either party, the issues both of law and of fact shall be tried de novo before a jury upon the request of either party.[1] Arbitration, or a bona fide offer in writing to arbitrate, shall constitute conditions precedent to the right to sue for such damages provided that *nothing herein contained shall preclude the institution of any such suit in a federal court having jurisdiction thereof, or the removal to said court of any suit brought in the State court, which under federal law may be removed to the Federal court* . . . .

Osage Allotment Act of June 28, 1906, 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 45 Stat. 1478-79 (emphasis and footnote added); *see also Quarles v. United States ex rel. Bureau of Indian Affairs*, 372 F.3d 1169, 1172 (10th Cir. 2004) (explaining that Section 2 of the Act authorizes "claims by owners or lessees of surface land for damages resulting from oil and gas mining operations" and that such claims have certain exhaustion requirements). Consistent with Section 2, the Act's implementing regulations set forth a procedure for the settlement of surface damage claims. *See* 25 C.F.R. § 226.21 (entitled "Procedure for settlement of damages claimed"). If the parties cannot reach a settlement, the claim must be submitted to arbitration. *See id.* § 226.21(c). Each party has ninety days from the date of the arbitrators' decision to "file an action in a court of competent jurisdiction." *Id.* § 226.21(f).

**B.   Procedural History**

A dispute arose between Plaintiffs and Defendants regarding the erection of electrical lines across the surface of Defendants' land. The parties entered into negotiations but were unable to reach a settlement. They then proceeded to arbitration in accordance with Section 2 and 25 C.F.R. § 226.21. On July 23, 2013, the arbitrators awarded $60,885.30 to Defendants.[2] On September 3,

---

[1] Thus, the remedy provided in section 2 is an "appeal"; however, such appeal entitles either party to a jury trial and de novo review of the arbitration decision.

[2] It is unclear to the Court whether this award compensated Defendants for damage already caused by Plaintiffs' erection of electrical lines, (*see* Mot. to Dismiss 3 (indicating that

2

2013, within the ninety-day statute of limitations, Plaintiffs filed their Complaint in this Court. As their basis for federal jurisdiction, Plaintiffs cited 28 U.S.C. § 1331, which provides original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs allege that the arbitration award should be reduced to zero because, under 25 C.F.R. § 226.19(a), they have the right to install electrical lines without paying any compensation to surface owners. (Compl. ¶¶ 28-29.) Alternatively, Plaintiffs request that the Court reduce the amount of the arbitrators' award. (*Id.* ¶ 30.) On September 25, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over the dispute.

## II.     Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995). The party seeking to invoke a federal court's jurisdiction has the burden of establishing that jurisdiction is proper. *Winnebago Tribe of Neb. v. Kline*, 297 F. Supp. 2d 1291, 1299 (D. Kan. 2004).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject

---

award was for "damages *caused* by Plaintiffs to Defendants' ranch located in Osage County, Oklahoma"), or whether the award compensated Defendants for granting Plaintiffs the right to erect lines in the future, (*see* Compl. ¶ 25 (indicating that parties could not reach agreement as to amount owed for "Plaintiffs' right to erect electrical lines across the property of Defendants"). However, this is irrelevant to the Court's analysis.

matter jurisdiction." *Id.* "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.* In this case, Defendants' motion to dismiss is a facial attack, and the Court accepts the allegations in the Complaint as true.

### III.   Discussion

Plaintiffs argue that 28 U.S.C. § 1331 confers jurisdiction on the Court because: (1) federal jurisdiction exists over every appeal taken pursuant to Section 2 because it creates a federal cause of action; or (2) alternatively, assuming the appeal is a state-law claim, the issue of whether 25 C.F.R. § 226.19(a) exempts damages caused by the installation of electrical lines presents a substantial federal question. Defendants argue that the Court lacks jurisdiction and that accepting Plaintiffs' arguments would "upset" prior jurisprudence:

> Since 1906, surface damage disputes in Osage County have been heard by the District Court sitting in and for Osage County. If Plaintiffs' invocation of federal question jurisdiction in this matter were successful, it would upset a century of jurisprudence, and throw open the federal courthouse doors to all such disputes regardless of the diversity of the parties or the amount in controversy. In its 1929 amendment to the Act, Congress showed a clear preference for these actions to be adjudicated at the county seat of Osage County, with federal jurisdiction to be exercised only if the Federal Court has diversity or federal question jurisdiction.

(Defs.' Reply in Support of Mot. to Dismiss 10.)

### A.   The Act Does Not Create a Federal Cause of Action

Construing the plain language of the Act, the Court concludes that the right to appeal set forth in Section 2 constitutes a state-law remedy. In the Act, Congress expressed its intent that appeals of arbitration awards may *always* be heard in Osage County District Court and may *only* be heard in federal court if federal jurisdiction exists. *See* Osage Allotment Act of June 28, 1906, 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 45 Stat. 1478-79 ("The appeal herein

4

authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County . . . . [N]othing herein shall preclude the institution of any such suit in federal court having jurisdiction thereof, or the removal to said court any suit brought in the State court, which under federal law may be removed . . . ."). If every appeal filed pursuant to Section 2 arose under federal law, federal jurisdiction would be automatic. The above-quoted statutory language, which indicates that cases will proceed in Osage County unless there exists a specific basis for federal jurisdiction, would cease to have meaning. Further, as a practical matter, these cases typically require fact-based determinations regarding the extent of damage and the amounts owed to an Osage County landowner. Such determinations are well-suited for Osage County judges and/or juries. Thus, the Court concludes that an appeal taken pursuant to Section 2 of the Act may proceed in federal court only when federal subject matter jurisdiction otherwise exists. *See Rennie v. T&L Oil, Inc.*, 06-CV-506-CVE, 2008 WL 2165892, at *4 (N.D. Okla. May 20, 2008) ("*Rennie I*") (reaching the same conclusion) ("The Act and corresponding BIA regulations merely provide the mandatory administrative procedure for recognizing Rennie's claims. The Act and regulations do not, in and of themselves, create claims for relief.");[3] *see generally Appleton v. Kennedy*, 268 F.

---

[3] In *Rennie I*, United States District Judge Claire Eagan implicitly overruled her prior reasoning in *Quarles v. United States ex rel. Bureau of Indian Affairs*, No. 00-CV-913-CVE, 2006 WL 2645131, at *2 (N.D. Okla. Sept. 12, 2006) ("*Quarles*, 2006 WL 2645131"), in which Judge Eagan had previously held that "Plaintiffs' argument that federal regulations merely create the procedure for adjudicating such claims is without merit, as the federal government has provided a cause of action for redress to injured landowners of Osage land." *See Rennie I*, 2008 WL 2165892, at *4. After the plaintiff in *Rennie* first cited *Quarles*, 2006 WL 2645131, in a motion to reconsider, Judge Eagan did reconsider her dismissal of the plaintiff's claims. *See Rennie v. T&L Oil, Inc.*, No. 06-CV-506-CVE, 2008 WL 2906091, at *5 (N.D. Okla. July 24, 2008) ("*Rennie II*"). However, she did so only to prevent manifest injustice based on her prior holding, and, in *Rennie II*, she expressly overruled her prior reasoning in *Quarles,* 2006 WL 2645131. *See Rennie II*, at *5 (making clear that the court had "subsequently rejected" prior reasoning). Therefore, Plaintiffs' reliance on the above-cited language in *Quarles*, 2006 WL 2645131, is unpersuasive. Surprisingly, neither party cited *Rennie I* or *Rennie II*. The Court will publish this decision in an attempt to prevent any further citation to *Quarles,* 2006 WL 2645131, which has now been rejected by Judge Eagan and this Court.

5

Supp. 22, 23-24 (N.D. Okla. 1967) (stating that diversity of citizenship created federal jurisdiction over appeal of arbitration decision in that case). Although it may be rare for a federal statute to create a state-law remedy, that is the Court's interpretation of Section 2 of the Act.

### B.     The Complaint Does Not Allege a Substantial Question of Federal Law

Alternatively, Plaintiffs argue that federal question jurisdiction exists because this case requires interpretation of a federal regulation – namely, 25 C.F.R. § 226.19(a). Federal question jurisdiction exists over a state-law claim when the right to relief requires resolution of a substantial question of federal law. *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1028 (10th Cir. 2012). However, "the 'substantial question' branch of federal question jurisdiction is exceedingly narrow – a 'special and small category' of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012). The Supreme Court has "stressed that the 'mere need to apply federal law in a state-law claim' will not 'suffice to open the arising under door.'" *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)). "Instead, 'federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Id.* (quoting *Grable*, 545 U.S. at 313). For example, where an element of a state-law quiet title action required resolution of the validity of a federal seizure notice – a legal question governed by federal law – the federal government had a "direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315. In contrast, the Supreme Court rejected federal jurisdiction over a case presenting the issue of whether a federal employee health plan administrator could be reimbursed for funds provided to an enrollee following the enrollee's recovery on a state-law tort claim. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690, 700 (2006) (reasoning that "[t]he state court in which the personal-injury suit was lodged is competent

to apply federal law").[4]

In this case, Plaintiffs argue that 25 C.F.R. § 226.19(a) permits lessees to erect electrical lines without owing compensation to a surface owner.[5] This question does not confer federal jurisdiction for three reasons. First, actions arising under Section 2 are necessarily appeals of arbitration awards, and Plaintiffs seek reversal of an arbitration award in favor of Defendants. Thus, the interpretive question posed under the federal regulation is more akin to a "defense" to a surface damage claim than to an "essential element" of any cause of action pursued by Plaintiffs. This counsels against a finding of substantiality. *See Gilmore*, 694 F.3d at 1173 (explaining that the Supreme Court has "focused on whether the issue is an 'essential element' of a plaintiff's claim," rather than a defense).

Second, although the Complaint cites to and requests interpretation of a federal regulation,

---

[4] Prior to *Empire*, the legal standard in the Tenth Circuit permitted dismissal for want of a substantial federal question only when the federal issue was: (1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration. *See, e.g., Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006). However, the Tenth Circuit recognized that, after *Empire*, this "sweeping language . . . may no longer be good law." *Gilmore*, 694 F.3d at 1175 n.3. Therefore, the Court has followed the more stringent "substantiality" standard recently set forth by the Tenth Circuit in *Gilmore*.

[5] Such regulation provides:

(a) Lessee or his/her authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, other appliances necessary for operations and marketing, and the right-of-way for ingress and egress to any point of operations. If Lessee and surface owner are unable to agree as to the routing of pipelines, electric lines, etc., said routing shall be set by the Superintendent. The right to use water for lease operations is established by § 226.24. Lessee shall conduct his/her operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any unavoidable nuisance to be maintained on the premises under his/her control.

25 C.F.R. § 226.19(a).

7

the Complaint does not implicate any "serious federal interests" that are best adjudicated in a federal forum. As explained above, a case filed under Section 2 may always be prosecuted in Osage County District Court and may only be filed in or removed to federal court if federal jurisdiction exists under 28 U.S.C. §§ 1331 or 1332. Therefore, under this statutory scheme, the mere fact that a federal regulation is involved does not mandate a finding of a substantial federal question. Further, the precise question presented – whether surface owners are entitled to damages caused by installation of electrical lines – does not directly implicate any overriding federal interests of the Act, such as protection of the underlying Osage mineral estate held in trust by the United States. *See generally Quarles*, 372 F.3d at 1172 (explaining that "the Act established a subsurface mineral estate trust, held by the United States, on behalf of the Osage Tribe" and that "[t]he Secretary of the Interior is directed to manage oil and gas extraction leases, with the royalties earned from the leases reserved to the Osage Tribe"). Instead, answering this question impacts the outcome of what are essentially land-damage disputes between oil and gas lessees and surface owners in Osage County.

Finally, Oklahoma courts are capable of deciding the interpretive question regarding the regulation. The Oklahoma Supreme Court has certainly addressed similar questions in the past, *see Bell v. Phillips Petroleum Co.*, 641 P.2d 1115, 1120 (Okla. 1982) (addressing meaning and validity of the Act's implementing regulations and concluding that "[i]mplicit in the federal regulations is an imposition of the right of ingress and egress upon the unleased surface lands as a necessary incident to the Osage Tribe's exercise of its ownership in the mineral estate"), and Plaintiffs rely on *Bell* in support of their proposed interpretation of 25 C.F.R. § 226.19(a). The fact that Plaintiffs principally rely on an Oklahoma Supreme Court decision further illustrates that no "serious federal interests" are implicated in their Complaint, and that Oklahoma state courts are competent to interpret the federal regulation in question.

8

### IV.     Conclusion

Plaintiffs have failed to demonstrate the existence of this Court's jurisdiction, and the Complaint is subject to dismissal without prejudice. Although this Court has no control over the disposition of the appeal when and if it is re-filed in state court, the Court would urge the state court to equitably toll the statute of limitations. Due to the unsettled nature of federal case law, Plaintiffs should not be penalized for seeking to vindicate their appeal in this forum. Going forward, however, parties should be on notice that time spent prosecuting these appeals in federal court – based upon similar arguments as those rejected in this Opinion and Order – may count toward the ninety-day statute of limitations.

Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 11) is GRANTED, and Plaintiffs' Complaint is dismissed without prejudice to re-filing in state court. The Court urges the state court to permit such filing out of time. This case will be published in an attempt to provide guidance in future cases.

**SO ORDERED this 24th day of February, 2012.**

**TERENCE KERN**
**United States District Judge**